**RECORD NO. 15-1359**

In The

# United States Court Of Appeals
## For The Fourth Circuit

**MADISON OSLIN, INC.; MADISON OSLIN RESEARCH, INC.,**

*Plaintiffs – Appellants,*

**v.**

**INTERSTATE RESOURCES, INC.; INTERSTATE CORRPACK, LLC; JAMES MORGAN; JOHN CRISTOS,**

*Defendants – Appellees,*

**and**

**AMERICAN INKS AND COATINGS COMPANY, INC.; PROGRESSIVE COATINGS, INC.; MOSLEY HOLDINGS, INC.; JERRY L. MOSLEY,**

*Defendants*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND AT BALTIMORE**

_____

**CORRECTED BRIEF OF APPELLANTS**

_____

**Rodney E. Miller**
**James M. Terrell**
**Perry M. Yancey**
**MCCALLUM METHVIN & TERRELL, PC**
**2201 Arlington Avenue South**
**Birmingham, AL 35205**
**(205) 939-0199**

*Counsel for Appellants*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1359__        Caption: __Madison Oslin, Inc., et al. v. Interstate Resources, Inc., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Madison Oslin, Inc.__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                          ☐ YES ☑ NO
     If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature:    _____    Date:    04/17/2015

Digitally signed by J Stephen Simms
DN: cn=J Stephen Simms, o, ou,
email=jssimms@simmsshowers.com,
c=US
Date: 2015.04.17 14:33:05 -04'00'

Counsel for: Madison Oslin, Inc.

## CERTIFICATE OF SERVICE
*************************

I certify that on ___04/17/2015___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Linda A. Friedman                          Gail Lynn Westover
Michael F. Walker                          Sutherland Asbill & Brennan LLP
Bradley Arant Boult Cummings, LLP          1275 Pennsylvania Ave NW
1819 Fifth Avenue North                    Washington, DC 20004
Birmingham, AL 35205

Eric A. Frechtel
Bradley Arant Boult Cummings, LLP
1615 L Street NW
Suite 1350
Washington, D.C. 20036

Digitally signed by J Stephen Simms
DN: cn=J Stephen Simms, o, ou,
email=jssimms@simmsshowers.com, c=US
Date: 2015.04.17 14:33:33 -04'00'

04/17/2015

(signature)                                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus
case, except that a disclosure statement is **not** required from the United States, from an indigent
party, or from a state or local government in a pro se case. In mandamus cases arising from a
civil or bankruptcy action, all parties to the action in the district court are considered parties to
the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are
required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the
required disclosure statement, counsel may file the disclosure statement in paper rather than
electronic form. Counsel has a continuing duty to update this information.

No. 15-1359          Caption: Madison Oslin, Inc., et al. v. Interstate Resources, Inc., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Madison Oslin Research, Inc.

(name of party/amicus)

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?                            ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent
    corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
    other publicly held entity?                                               ☐ YES ☑ NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: _____
Digitally signed by J Stephen Simms
DN: cn=J Stephen Simms, o, ou,
email=jsimms@simmsshowers.com,
c=US
Date: 2015.04.17 14:33:55 -04'00'

Date: _____04/17/2015_____

Counsel for: Madison Oslin, Inc. and Madison Oslin Research, Inc.

## CERTIFICATE OF SERVICE
*****************************

I certify that on _____04/17/2015_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:
Linda A. Friedman                                  Gail Lynn Westover
Michael F. Walker                                  Sutherland Asbill & Brennan LLP
Bradley Arant Boult Cummings, LLP                  1275 Pennsylvania Ave NW
1819 Fifth Avenue North                            Washington, DC 20004
Birmingham, AL 35205

Eric A. Frechtel
Bradley Arant Boult Cummings, LLP
1615 L Street NW
Suite 1350
Washington, D.C. 20036

_____
Digitally signed by J Stephen Simms
DN: cn=J Stephen Simms, o, ou,
email=jsimms@simmsshowers.com, c=US
Date: 2015.04.17 14:34:15 -04'00'

04/17/2015

(signature)                                                              (date)

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ...................................................................iv

I.     STATEMENT OF SUBJECT MATTER AND
       APPELLATE JURISDICTION....................................................1

II.    STATEMENT OF THE ISSUES ..................................................2

III.   STATEMENT OF THE CASE ......................................................2

       A.    Procedural History...........................................................2

       B.    Rulings for Review..........................................................5

       C.    Narrative Statement of Facts ..........................................6

             1.    Madison Oslin developed an original idea of using a
                   polyester coating to create a recyclable corrugated box as
                   an alternative to wax-coated boxes ..............................6

             2.    The Interstate Defendants became interested in producing
                   and marketing a recyclable corrugated box for sale to its
                   customers in the poultry and produce industries and
                   began researching wax-alternative coatings ..............................7

             3.    Plaintiffs' trade secret was not public information and
                   was not generally known in the paper coating and box-
                   making industry..........................................................8

             4.    The Defendants sought out the Plaintiffs to learn their
                   process for making a wax-alternative recyclable box...............10

             5.    Madison Oslin and Interstate Defendants began working
                   together as a joint venture and Plaintiffs took reasonable
                   steps to maintain the secrecy of their trade secret ....................12

i

6.    The parties' joint venture was successful ................................16

7.    The Interstate Defendants consistently represented, to Plaintiffs, other companies, Interstate's Board of Directors, and outside investors that the parties had formed a joint venture ................................19

IV.    SUMMARY OF THE ARGUMENT ............................................20

V.    ARGUMENT....................................................................22

     Standard of Review..........................................................22

A.    Plaintiffs Presented Substantial Evidence Demonstrating That Their Process For Making A Wax-Alternative Recyclable Box Was Not Publicly Known..................................................23

     1.    A Non-Disclosure Agreement Is Not A Necessary Prerequisite To A Claim For Wrongful Disclosure Of A Trade Secret Under The Alabama Trade Secret Act ...............29

     2.    Absolute Secrecy Is Not Required To Preserve A Trade Secret And Aspects Of The Trade Secret Being Publicly Available Does Not Destroy The Secrecy of the Trade Secret..........................................................30

B.    The District Court Erred By Granting Summary Judgment On Plaintiffs' Breach Of Contract Claim Because A Reasonable Jury Could Find That The Parties Formed An Oral Joint Venture Agreement ..........................................................32

     1.    Whether The Parties Entered Into An Oral Agreement To Form A Joint Venture Is A Question For The Jury .................33

     2.    The District Court Erred As A Matter Of Law Because The Statute Of Frauds Does Not Bar Plaintiffs' Claim For Breach Of Contract..........................................36

3.    Whether Plaintiffs' Fully Performed Under The Terms Of The Parties Joint Venture Agreement Is A Question For The Jury ............................................................................40

C.    The United States District Court for the Northern District of Alabama incorrectly determined that Plaintiff's claims for Misrepresentation and Suppression are preempted by the Alabama Trade Secrets Act and these claims are now properly appealable ............................................................................41

VI.    CONCLUSION ..............................................................................44

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Adickes v. S.H. Kress & Co.*,
    398 U.S. 144 (1970)...................................................................22

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...................................................................22

*Beiersdoerfer v. Hilb, Rogal & Hamilton Co.*,
    953 So. 2d 1196 (Ala. 2006).......................................................43

*Big Thicket Broadcasting Co. of Alabama, Inc. v. Santos*,
    594 So. 2d 1241 (Ala. Civ. App. 1991).......................................35

*Black Diamond Dev., Inc. v. Thompson*,
    979 So. 2d 47 (Ala. 2007)...........................................................33

*Charbonnages de France v. Smith*,
    597 F.2d 406 (4th Cir. 1979) ......................................................23

*Cunningham v. Lowery*,
    45 Ala. App. 700, 236 So. 2d 709 (Ala. Civ. App. 1970), *cert. denied*,
    236 So. 2d 718 (1970) ................................................................36

*Dabbs v. Four Tees, Inc.*,
    36 So. 3d 542 (Ala. Civ. App. 2008)..........................................40

*Decision Insights, Inc. v. Sentia Grp., Inc.*,
    416 F. App'x 324 (4th Cir. 2011) ...............................................22

*Drill Parts & Serv. Co., Inc. v. Joy Mfg. Co.*,
    439 So. 2d 43 (Ala. 1983)...........................................................31

*Essex Group, Inc. v. Southwire Co.*,
    269 Ga. 553, 501 S.E.2d 501 (1998) ....................................30, 31

iv

*Hertz v. Luzenac Group*,
    576 F.3d 1103, 91 U.S.P.Q.2d 1801 (10th Cir. 2009)....................................31

*Hill v. Raney Ins. Agency of Anderson, Inc.*,
    474 So. 2d 738 (Ala. Civ. App. 1985)...........................................37

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
    174 F.3d 411 (4th Cir. 1999) ...........................................26, 27, 30

*Hornady v. Plaza Realty Co.*,
    437 So. 2d 591 (Ala. Civ. App. 1983)...........................................37, 38, 39

*Industrial Maintenance Cleaning Contractors, Inc. v.*
*Sales Consultants of New Orleans, Inc.*,
    342 So. 2d 377 (Ala. Civ. App. 1977)................................... 33-34

*Land v. Cooper*,
    250 Ala. 271, 34 So. 2d 313 (1948) ...........................................39

*Mason v. Jack Daniel Distillery*,
    518 So. 2d 130 (Ala. Civ. App. 1987) ...........................................30

*Molex Co., LLC v. Andress*,
    887 F. Supp. 2d 1189 (N.D. Ala. 2012) ........................................30

*Peat, Inc. v. Vanguard Research, Inc.*,
    378 F.3d 1154 (11th Cir. 2004) ...................................................23

*Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*,
    318 F.3d 1284 (11th Cir. 2003) ............................................23, 30

*Pierce v. Ford Motor Co.*,
    190 F.2d 910 (4th Cir. 1951) ...................................................23

*Plastic & Metal Fabricators v. Roy*,
    163 Conn. 257, 303 A.2d 725 (Conn. 1972) ................................27

*Quimby v. Memorial Parks, Inc.*,
    667 So. 2d 1353 (Ala. 1995).......................................................37

*Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*,
    673 F.3d 294 (4th Cir. 2012) ...........................................................22

*Sunnyland Mobile Homes, Inc. v. Thompson*,
    384 So. 2d 1111 (Ala. Civ. App. 1980).....................................33, 35

*Sylvia Dev. Corp. v. Calvert Cnty.*,
    48 F.3d 810 (4th Cir.1995) .............................................................22

*The Soap Co. v. Ecolab, Inc.*,
    646 So. 2d 1376 (Ala. 1994)............................................................23

*W.P. Brown & Sons Lumber Co. v. Rattray*,
    238 Ala. 406 (Ala. 1939) ................................................................39

*Wadsworth House Movers, Inc. v. Salvage One Demolition, Inc.*,
    474 So. 2d 686 (Ala. 1985)..............................................................32

*Walker v. Walker*,
    2013 WL 5861499 (Ala. Civ. App. 2014)......................................33

**Statutes:**

28 U.S.C. § 1291 (2014) ..............................................................2, 42

Ala. Code § 7-2A-201 (Statute of Frauds)....................................*passim*

Ala. Code § 8-9-2(1) ...........................................................................36

Ala. Code § 8-27-1, et seq. ("ATSA")..........................................*passim*

Ala. Code § 8-27-2..............................................................................24

O.C.G.A. §§ 10-1-760-10-1-767 ("Georgia Trade Secrets Act of 1990")..............30

**Rules:**

Fed. R. Civ. P. 56...............................................................................22

Fed. R. Civ. P. 56(c)...........................................................................22

Fed. R. Civ. P. 58 .................................................................................1

**Other Authorities:**

Richard E. Day, *Protection of Trade Secrets in South Carolina*,
    42 S.C. L. Rev. 689 (1991)........................................................................27

1 Roger M. Milgrim, *Milgrim on Trade Secrets*
    § 1.07[2] (1998) ..................................................................................27

*Restatement (Third) of Unfair Competition* § 39(f) (1995) ....................................30

# I.  STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Appellants, Madison Oslin, Inc. and Madison Oslin Research, Inc. (collectively "Madison Oslin" or "Plaintiffs") are Alabama corporations with a principal place of business in Jefferson County, Alabama. Defendant Interstate Resources, Inc., is a Virginia corporation with its principal place of business in Arlington, Virginia. (JA pp. 614-615). Defendant Interstate Corrpack, LLC is a Maryland corporation with its principal place of business in Cambridge, Maryland.[1] (JA p. 615). Defendants James ("Jim") Morgan and John Cristos are resident citizens of South Carolina and North Carolina, respectively. (JA p. 134-135).

The United States District Court for the District of Maryland granted summary judgment to Defendants on all pending claims: breach of contract, breach of duty of good faith and fair dealing and breach of implied contract as to the Interstate Defendants and claims under the Alabama Trade Secrets Act (Ala. Code § 8-27-1, et seq.) against the Interstate Defendants, and their two employees, Morgan and Cristos. The district court's final judgment order was entered on March 25, 2015 pursuant to Fed. R. Civ. P. 58 and in it the court incorporated any and all prior rulings disposing of any claims against any parties, which included a

---

[1] Interstate Corrpack was named in the Complaint incorrectly as Interstate Cambridge Container LLC.

1

prior ruling granting a motion to dismiss in part as to certain claims. (JA p. 632).

On April 6, 2015, Plaintiffs timely appealed the summary judgment order (JA pp.

632A-632B).   This Court has jurisdiction to decide this appeal pursuant to 28

U.S.C. § 1291 (2014).

## II.    STATEMENT OF THE ISSUES

A.    Whether there is adequate evidence to enable a reasonable jury to find that Plaintiffs' process for making a wax-alternative recyclable box was not publicly known and was therefore a trade secret.

B.    Whether the district court erred in finding that an oral joint venture did not exist when the evidence demonstrates that the parties did form a joint venture and that Plaintiffs satisfied their obligations under their agreement.

C.    Whether the district court erred in finding that the Statute of Frauds barred Plaintiffs' breach of contract claim when the evidence establishes that a joint venture between the parties was formed and that the joint venture was fully capable of being performed within one year.

D.    Whether Plaintiffs' claims for Misrepresentation and Suppression are preempted by the Alabama Trade Secrets Act.

## III.   STATEMENT OF THE CASE

### A.    Procedural History

Plaintiffs brought suit claiming that the Defendants breached a joint venture

agreement and misappropriated their process for creating a wax-alternative

recyclable corrugated box. Plaintiffs originally filed this case in Alabama state

court asserting claims in twelve counts against eight named Defendants.  (JA pp.

615-616).[2]   The claims included conversion, fraudulent concealment, unjust enrichment, misappropriation of trade secrets, breach of fiduciary duty, breach of contract, breach of implied duty of good faith and fair dealing, misrepresentation, suppression, tortious interference with a business relationship, breach of implied contract, and injunctive relief.  (*Id.*).

The Defendants removed the case to the United States District Court for the Northern District of Alabama and filed a motion to transfer venue (JA pp. 126, 161) and a partial motion to dismiss, or for more definite statement (JA pp. 80, 88). The Defendants did not seek dismissal of the Plaintiffs' claims brought under the Alabama Trade Secrets Act. On March 15, 2011, the Northern District of Alabama denied the motion to dismiss as to the claims for breach of contract, breach of implied contract and breach of the implied duty of good faith and fair dealing. (JA p. 318). The Northern District of Alabama held that Plaintiffs' claims for conversion, unjust enrichment, breach of fiduciary duty, misrepresentation, and suppression were subsumed or preempted by the Alabama Trade Secrets Act and granted the motion to dismiss as to those claims.[3]  (JA pp. 335-338).

---

[2] Former defendants American Inks and Coating Company, Inc., Progressive Coatings, Inc., Mosely Holdings, Inc., and Jerry L. Mosely were dismissed from the lawsuit without prejudice.  (JA p. 211).

[3] Plaintiffs voluntarily dismissed without prejudice their claims for fraudulent concealment and tortious interference with a business relationship.

3

The court also granted the Defendants' motion to transfer and the case was transferred to the United States District Court for the District of Maryland. (JA pp. 364 -367). Thus, Plaintiffs' claims pending in the District of Maryland were the Alabama Trade Secrets Act claims as to the Interstate Defendants, Morgan and Cristos; and the breach of contract, breach of implied contract and breach of the implied duty of good faith and fair dealing claims against only the Interstate Defendants. (JA pp. 615-616).

After extensive discovery conducted over four (4) years, the Interstate Defendants filed a motion for summary judgment as to the breach of contract claims (JA p. 1253A) and Defendants Morgan and Cristos moved for summary judgment as to the Trade Secrets Act claims (JA pp. 432, 633). The Interstate Defendants joined in that motion. (JA p. 428). Plaintiffs responded to the motions (JA pp. 1751, 3574) and a hearing was held on September 12, 2014. On March 25, 2015, The United States District Court for the District of Maryland granted summary judgment in favor of Defendants against Plaintiffs dismissing all claims and incorporating any and all prior rulings disposing of any claims against any parties, including the Northern District of Alabama's dismissal of Plaintiffs' claims of fraudulent misrepresentation and suppression brought against the Interstate Defendants and Morgan. (JA p. 632).

**B.    Rulings for Review**

The District of Maryland granted summary judgment in favor of Defendants' on Plaintiffs' Alabama Trade Secret Act claim finding that "there is no evidence adequate to enable a reasonable jury to find that the purported trade secrets were secret at any time relevant to the instant case." (JA pp. 621-625).

Summary judgment was also granted in favor of Defendants on Plaintiffs' contract claims.  The district court found that an agreement was not formed because there was no mutual assent to essential terms, and if there had been an agreement, it was not in writing and therefore unenforceable by virtue of the Statute of Frauds.  (JA pp. 625-630).

The Summary Judgment Order also incorporated "any and all prior rulings disposing of any claims against any parties" which included the District Court for the Northern District of Alabama's order dismissing certain of Plaintiffs' state law claims based on a finding that the Alabama Trade Secrets Act preempted any claim where the underlying facts are "essentially the same" as those pled for relief under the Trade Secrets Act.  (JA p. 632). Among the claims dismissed, and at issue in this appeal, were Plaintiffs' claims of misrepresentation and fraudulent suppression asserted against Defendants Interstate and Morgan.

## C.    Narrative Statement of Facts

### 1.    Madison Oslin developed an original idea of using a polyester coating to create a recyclable corrugated box as an alternative to wax-coated boxes.

The district court correctly noted that producers of meat products, including chicken, have for many years used corrugated boxes packed with ice to ship their products. Until recently, the corrugated boxes were impregnated with paraffin wax to make the boxes moisture resistant. Wax boxes were expensive to produce and not recyclable, requiring additional costs for their disposal. (JA pp. 617-618).

Madison Oslin owned a paper-coating facility and coated paper to be used in packaging and in particular, corrugated boxes. As the district court noted, Madison Oslin developed an original idea of using a polyester coating to create a recyclable corrugated box as an alternative to wax-coated boxes. (*Id*.). Plaintiffs did so by first successfully producing a wax-alternative, recyclable linerboard using a PET coating. (JA pp. 1827, 1831-1832, 1932-1935; JA pp. 2587 -2591). Plaintiffs were the first company to take their PET coated linerboard and run it on corrugators, and the first company to make a commercially viable recyclable box. (JA pp. 2667-2668).[4]

---

[4] In 1998, the Fibre Box Association ("FBA") created a recyclability protocol as a means of testing moisture-proof products, like PolySupreme™, to determine if these products were truly recyclable. (JA p. 1933). Twenty-nine companies tested their products under FBA's recyclability protocol and Madison Oslin was the first and only company to pass the recyclability protocol. (JA pp. 1932-1935). As a result, Plaintiffs successfully placed over 10 million wax-alternative, recyclable corrugated boxes in the marketplace. (*See* JA pp. 2926 - 2931; August 16, 2007

2.    **The Interstate Defendants became interested in producing and marketing a recyclable corrugated box for sale to its customers in the poultry and produce industries and began researching wax-alternative coatings.**

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████

Scott Seydel, who was a supplier to the Interstate Defendants and had also supplied PET to Plaintiffs, suggested to Interstate that Plaintiffs had previously achieved success in coating linerboard with a wax-alternative coating material. (JA p. 2737). Seydel recommended that Interstate's President, Jim Morgan, and Interstate Container Cambridge's General Manager, Pete Bugas, meet with representatives of Madison Oslin to gain assistance in producing a recyclable corrugated box. (JA pp. 1987-1988). Seydel also expressed to Interstate that Plaintiffs were the best in the industry at controlling coat weight, costs and applying his company's PET coating. (JA pp. 2465-2466). ████████████████

---

email from Scott Seydel to Jim Krahn and Pete Bugas. This fact was known by Scott Seydel, one of Interstate's suppliers, and ultimately led him to recommend that Defendants contact Plaintiffs to assist them in creating a wax-alternative, recyclable corrugated box. (*Id.*).

7

████████████████████████████████████████████

████████████████████████████████████████████

█████████

      **3.**     **Plaintiffs' trade secret was not public information and was not generally known in the paper coating and box-making industry.**

Plaintiffs' process for making recyclable boxes using PET as a moisture resistant coating was not generally known in the paper coating and box-making industry. (JA pp. 2759-2760; JA p. 3134). ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ Thus, knowing that Plaintiffs used PET in their coating, in addition to reviewing Plaintiffs' patents, was not enough information alone for the Interstate Defendants to successfully coat with PET. (JA p. 3148). ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

███████████

Plaintiffs also took reasonable steps to maintain the secrecy of their trade secret. The plant manager for Madison Oslin, Inc., Ronnie McKendree, made a declaration explaining that he was specifically instructed by the principals of Madison Oslin that the company's process for coating paper was proprietary and confidential and wasn't to be shared with anyone; that Madison Oslin did not generally permit persons to enter the plant unless there was a legitimate business purpose; that all persons visiting the plant were stopped at the front office to determine the purpose for the visit; that any person visiting the plant with a legitimate business purpose had to be cleared by management or a principal; that to his knowledge any visitor with a legitimate business purpose that had been cleared by management was required to sign a non-disclosure or confidentiality agreement before they were allowed into an area where any part of the coating process took place; that strangers (those without a legitimate business purpose) were not allowed to walk around the plant, view the process, or ask questions about the process; that the coating was mixed in the "kitchen," out of the general view of those in the plant; and that the entire Madison Oslin process, including information about how to corrugate the coated linerboard, was not freely accessible to the

9

employees, and in fact, the entire process was not even made known to him. (*See* JA pp. 3720-3721; JA pp. 2149-2150, 2487-2488, 2492-2494; 4527).

Furthermore, Kelly Jackson, another employee of Madison Oslin, confirmed the statements of McKendree. (*See* JA pp. 3723-3724; JA pp. 1957-1958, explaining that visitors allowed in the plant could view the operation only "from a distance," that "in terms of being able to learn anything…you could see parts of it…" but "that was only a small part of the overall effort" that Plaintiffs had; *see also* JA pp. 2159-2160, employees knew it was confidential).

> **4.      The Defendants sought out the Plaintiffs to learn their process for making a wax-alternative recyclable box.**

On October 7, 2007, Major Ogilvie, Mat Whatley, Wally Nall and Glenn Perry, Plaintiffs' principal owners, met with Defendant Morgan and other representatives of the Interstate Defendants for dinner in Birmingham, Alabama. (JA pp. 1989, 2139).  During this meeting, Defendants expressed that they knew they could produce corrugated boxes and that Plaintiffs could provide the coating knowledge, experience and technology.    (JA pp. 2463-2464). ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████  As noted above, however, despite this research

the Interstate Defendants were unable to accomplish what Plaintiffs had done in the past.

Major Ogilvie made it clear to Defendant Morgan and the others that after a recent business dispute with International Paper, Plaintiffs were unwilling to assist the Interstate Defendants with its wax-alternative project without the parties establishing a collaborative venture. (JA p. 2756). To wit, Interstate's President, Defendant Morgan, replied "okay, we understand that." (*Id*.). Defendant Morgan was authorized to negotiate on behalf of the Interstate Defendants and reach an agreement with Plaintiffs. (JA pp. 3031-3032). As such, "Jim [Morgan] stressed to [Plaintiffs] that he was the guy that could make the decision, where we had the disaster with IP and this time we had a deal…" (JA p. 3294).

Based on these representations made during the dinner meeting, the parties agreed to form a joint venture. (JA pp. 2042, 2063, 2142-2143)("We had an oral agreement to move forward with our joint venture. We had an oral understanding. And yes, I believed we were partners."); (JA p. 2517)("We had a deal with [Interstate] to go forward in a joint venture.")  The goal of the joint venture was to create a wax-alternative, recyclable corrugated box where Interstate would manufacture and sell the boxes and Madison Oslin would provide the equipment, the know-how, the patents, the technology, and their years of coating experience. (JA pp. 2463-2464, 2757-2758).  In exchange for Plaintiffs supplying their trade

11

secret technology to the joint venture, Plaintiffs were promised $6 million dollars from Interstate.  (JA pp. 2056-2057).  ██████████████████████

████████████████████████████████████████

████████████████████████████

The Defendants' objective in meeting Plaintiffs, and correspondingly, making the representations that were made during the meeting, was to gain access to the technology described as Madison Oslin's successful process for coating linerboard with a recyclable, wax-alternative material.  (JA pp. 2735-2736). Defendants toured Plaintiffs' facility the morning after the initial dinner meeting. (JA p. 2749).  During this tour, Interstate observed Plaintiffs' coating process and learned how Plaintiffs coated linerboard.  (JA p. 2741).  The Defendants understood that no one in the business had currently been able to successfully do what Plaintiffs had accomplished.  (JA pp. 2759-2760).

5.    **Madison Oslin and Interstate Defendants began working together as a joint venture and Plaintiffs took reasonable steps to maintain the secrecy of their trade secret.**

Within a week of their dinner meeting, Defendant Morgan took on the responsibility of framing the tasks necessary for the joint venture to succeed.  (JA pp. 2755-2756). Shortly after the October 2007 meeting where the parties agreed to form a joint venture, Interstate drafted a Conceptual Outline recognizing that ████

████████████████████████████████████████



The Interstate Defendants also drafted a trial plan for the wax-alternative project outlining the work that needed to be performed. (JA pp. 2999-3000).

In preparation for the trials in February, 2008, Morgan told Plaintiffs

that he was prepared to go ahead and pay them $6 million in one lump sum.  (JA p. 2120).

Based upon the understanding that the parties were joint venture partners, Plaintiffs performed trials with Defendant Interstate.  (JA p. 1975).  Plaintiffs taught the Interstate Defendants about the paper, the coating process and how to corrugate the coated linerboard based upon their belief that the parties had a joint venture partnership.  (JA p. 2038).  Plaintiffs showed Defendants everything that they knew about successfully producing a wax-alternative, recyclable corrugated box based upon the existence of their joint venture.  (JA pp. 2450-2451). ████

████████████████████████████████████████████

████████████████████████

Also as part of the venture, in February of 2008, Major Oglivie went to meet Defendant Cristos in Savannah, Georgia, at Defendant Morgan's request, to meet with the paper mill folks and share samples of Plaintiffs' base stock, and to tour Interstate's facility.  (JA p. 2000).  There, Major Oglivie shared with Mr. Cristos two other important qualities from a coating standpoint, ███████████████

████████████████████████████████ are important for attaining the correct strength of the paper.

Throughout the parties' interactions Plaintiffs' information for producing a wax-alternative recyclable box was regarded as confidential information to be

protected. Jim Krahn, General Manager of Interstate's Cambridge plant from 2005 to 2010, dealt directly with Plaintiffs, examined their processes first-hand, led the Interstate Defendants' wax-alternative project, and regarded both the Interstate Defendants' box making process and Plaintiffs' as a trade secret. (JA p. 3059).

At the outset, Major Ogilvie explained that Plaintiffs would teach the Defendants everything they know only if the parties were in agreement to work as partners. (JA p. 2758; JA p. 3294). Plaintiffs made it clear that the information they were sharing with the Defendants was confidential and was to be kept confidential and took reasonable measures to maintain the confidentiality.

When Defendants interjected an outsider to the relationship as part of the trial process, Plaintiffs required him to sign a confidentiality and non-disclosure agreement, and explained to both him and Defendant Cristos that the information being shared was confidential. ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████

In addition to the steps noted above, Plaintiffs also designated communications and materials as confidential. On April 17, 2008 Major Ogilvie emailed Jim Krahn and Jim Morgan, to provide coating information and corrugating instructions. In it he reminded the Defendants to "[p]lease keep confidential..." (JA 3822-3826).

### 6.    The parties' joint venture was successful.

On November 20, 2008, Defendant Jim Morgan, President and Chief Operating Officer of Interstate Resources, informed the Board of Directors that



As reflected in the draft Board Minutes, the Interstate Defendants had

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████

Contrary to the district court's inferences drawn from the evidence, Plaintiffs' trials were successful ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████

Larry Nykwest, Interstate's in-house technical expert and designated corporate representative for the areas of development, design and production of Interstate's Greencoat product, testified ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████

     Jim Krahn, a manager for the Interstate Defendants, also acknowledged the significance of Plaintiffs' contribution to the research and development of Greencoat. ██████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████

**7.     The Interstate Defendants consistently represented, to Plaintiffs, other companies, Interstate's Board of Directors, and outside investors that the parties had formed a joint venture.**

Defendants regularly referred to the parties as joint venturers and consistently represented to Plaintiffs, outside coating companies, Interstate's Board of Directors, investment capital firms, and potential investors that the parties were working together as a joint venture.  For example:

- During the initial dinner, both Madison Oslin and Interstate "repeatedly" used the term joint venture in the context of creating a certifiable wax-alternative corrugated box.  (JA pp. 2757-2758).



- Representing to outside coating companies that "wax-alternative coatings could not be included in the scope of [Patriot Coatings'] project development because Interstate Resources, Inc. *already had a deal in place to develop and coat containerboard for wax-alternative boxes with Madison Oslin Inc.*"  (JA pp. 3428-3429)(emphasis added).



19

███████████████████████████████████████████
██████████████████

The Interstate Defendants cannot deny the existence or meaning of these documents, because they were provided drafts of these agreements and never requested that the language stating that Madison Oslin and Interstate Resources were joint venturers be changed or removed.  (JA pp. 2819-2820, 2828-2829, 2855-2857, 2875-2877, 2887-2894, 2916; JA pp. 3511-3512, ████████████████

████████████████████████████

The evidence in the record creates genuine issues of material fact as to whether Madison Oslin and Interstate Resources entered into a joint venture, and whether Defendants misappropriated Plaintiffs' trade secret under the guise of a joint venture in order to obtain Plaintiffs' protected trade secret.  These fact questions were improperly resolved by the district court and should properly be decided by the trier of fact.

## IV.    SUMMARY OF THE ARGUMENT

The district court erred when granting summary judgment in Defendants' favor on Plaintiffs' Alabama Trade Secret Act ("ATSA") claims finding that "there is no evidence adequate to enable a reasonable jury to find that the purported trade secrets were secret at any time relevant to the instant case."  (JA pp. 624-625). To reach its conclusion, the district court construed the evidence in the movants'

favor, rather than Plaintiffs'. Plaintiffs presented substantial evidence demonstrating that their process for making a wax-alternative recyclable box was not publicly known. Further, the fact that some aspects of Plaintiffs' process may have been publicly known does not disqualify the entire process from trade secret protection.

The district court erred when granting summary judgment in favor of Defendants' on Plaintiffs' contract claims because substantial evidence exist showing that the parties had an agreement to form a joint venture and in fact formed a joint venture. The district court also erred when it determined that Plaintiffs' breach of contract claims were barred by Alabama's statute of frauds. First, it was not impossible for the parties' agreement to be performed within one year. Second, Defendants waived any statute of frauds defense by their actions affirming the parties' agreement.

The district court's Judgment Order also included the Northern District of Alabama's order dismissing certain of Plaintiffs' state law claims based upon an erroneous finding that the Alabama Trade Secrets Act preempts any claim where the underlying facts are "essentially the same" as those pled for relief under the ATSA. (JA p. 632). In this appeal, Plaintiffs challenge the dismissal of their misrepresentation and suppression claims against the Interstate Defendants and Morgan. The order dismissing these claims should be reversed, because Plaintiffs

asserted claims of fraud and suppression against the Interstate Defendants and Morgan based on facts other than those underlying their Trade Secret Act claim.

## V.     ARGUMENT

### Standard of Review

The standard for review for summary judgment is *de novo*. *See Decision Insights, Inc. v. Sentia Grp., Inc.*, 416 F. App'x 324, 328 (4th Cir. 2011). In reviewing a summary judgment, the appellate court "appl[ies] de novo the same standard that the district court was required by law to apply for granting the motion for summary judgment." *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 304 (4th Cir. 2012), *citing Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 817 (4th Cir.1995). Federal Rule of Civil Procedure 56 requires the entry of summary judgment only if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[While] Plaintiffs must present affirmative evidence in order to defeat a properly supported motion for summary judgment…the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment is

inappropriate "even where there is no dispute as to the evidentiary facts but only as to the conclusions to be drawn therefrom." *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979) (quoting *Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir. 1951)).

### A.   Plaintiffs Presented Substantial Evidence Demonstrating That Their Process For Making A Wax-Alternative Recyclable Box Was Not Publicly Known.

Plaintiffs successfully developed a process for creating a wax-alternative corrugated box using PET (polyethylene terephthalate) to coat the linerboard of the corrugated sheet used to make the box. The process, and hence the claimed trade secret, was comprised of the following:

(1)   The specific temperatures necessary to heat the coating;
(2)   The specific mixtures of the materials to produce the coating;
(3)   The ability to mix the coating correctly and to do so consistently;
(4)   The ability to apply the coating to paperboard at the right consistency; and
(5)   The ability to instruct corrugating companies about the proper methods of corrugating and heating the coated paper.

(JA pp. 33-34).

Under Alabama law, whether or not information constitutes a trade secret is a question of fact for the jury. *Peat, Inc. v. Vanguard Research, Inc*., 378 F.3d 1154, 1158 (11th Cir. 2004); *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1291 (11th Cir. 2003); *The Soap Co. v. Ecolab, Inc.*, 646 So. 2d 1376, 1372 (Ala. 1994)(overruled on other grounds). Yet, the district court determined that

Plaintiffs' process for creating a wax-alternative corrugated box was not a "trade secret" as defined by the Alabama Trade Secrets Act because, by the court's estimation, Plaintiffs could not establish that the information was "not publicly known." (JA p. 622, quoting the Alabama Trade Secrets Act, Ala. Code § 8-27-2).

The district court based its ruling on the finding that certain technical aspects of Plaintiffs' process for making the box were disclosed in two process patents held by Plaintiffs. Specifically with reference to items one through four above, the court noted that "the specific temperatures necessary to heat the coating and the specific mixtures of materials to produce the coating are stated to be part of the coating process." (JA pp. 623-624). Likewise, the court determined that "someone 'skilled in the art' would undoubtedly have the ability to mix the coating correctly and consistently and apply the coating to paperboard at the right consistency 'without undue experimentation' for the patent to be valid." (JA p. 624).

With regard to the fifth aspect of Plaintiffs' box making process (i.e. "the ability to instruct corrugating companies about the proper methods of corrugating and heating the coated paper"), the court held that Plaintiffs "…provided this instruction to outsiders, its customers and prospective customers," and

> …produced neither evidence, nor even a contention, that all of these disclosures were protected by confidentiality agreements. Moreover, this "secret" method of instruction was described in open court in a previous lawsuit and documented in a video presented to the public on YouTube.

(*Id.*).

24

The district court's finding that Plaintiffs' trade secret was publicly known is erroneous because Plaintiffs presented substantial evidence demonstrating that it was not publically known and that the evidence should have been construed in Plaintiffs' favor. ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

Likewise, the corrugating instructions that were part of Plaintiffs' trade secret were not publicly known.   The district court erred when reaching the conclusion to the contrary because the court again construed the evidence in Defendants' favor, rather than Plaintiffs. Specifically, the instructions "described in open court in a previous lawsuit" and "documented in a video presented to the public on YouTube" pertain only to Plaintiffs' coating facility and do not disclose

any information about corrugating techniques related to the making of a wax-alternative recyclable box. Therefore, the court erred in finding that Plaintiffs' trade secret became "publicly known" though the video and testimony.

Additionally, the testimony from a previous lawsuit involving Plaintiffs did not make Plaintiffs' trade secret publicly known.  Notably, Defendants did not have a copy of the transcript prior to the instant litigation and obtained it only through discovery requests made to Plaintiffs. Likewise, no evidence or argument was presented by Defendants to indicate that the transcript was in the public domain and available to anyone.  Moreover, a number of cases have dealt with the disclosure of trade secrets in public court files, and none holds that such disclosure, when unaccompanied by evidence of further publication, automatically destroys the "secrecy" of that trade secret. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 417-18 (4th Cir. 1999).  In *Hoechst*, the defendants argued that plaintiffs' "In–Line Technology" could not be considered a trade secret because a document describing this technology had previously been filed unsealed and remained in the district court's public records.  The *Hoechst* defendants' argued that the process thus became "readily ascertainable by proper means," including by copying the process from the district court's records.  However, the court recognized that "most courts and commentators have not treated the secrecy requirement as an absolute, but as a relative concept." *Hoechst*, 174 F.3d at 418,

citing *Plastic & Metal Fabricators v. Roy*, 163 Conn. 257, 303 A.2d 725, 731 (Conn. 1972) ("absolute secrecy is not essential"); 1 Roger M. Milgrim, *Milgrim on Trade Secrets* § 1.07[2] (1998) ("The prevailing…school is that secrecy need be but relative."); Richard E. Day, *Protection of Trade Secrets in South Carolina*, 42 S.C. L. Rev. 689, 696–97 (1991) ("Absolute secrecy is not required to preserve a trade secret...."). "As a result, courts addressing this fact-intensive issue have regarded the unsealed filing of a document as a single, non-dispositive factor to be weighed in determining whether the document's contents remain a trade secret." *Id*. The present case is analogous to *Hoecht*.

Similarly, the YouTube video did not make Plaintiffs' trade secret method publicly known. Plaintiffs only created the video to give a general overview of Plaintiffs' plant. Mat Whatley explained that the YouTube video was created to demonstrate the magnitude of their plant and does not indicate how the process runs; it is merely a broad description of the coater running. (JA pp. 2470, 2498). Furthermore, the YouTube video was not shown at the summary judgment hearing in the instant case and was never entered into evidence. Yet, the court construed the evidence of the video in Defendants' favor. The court erred in doing so, and whether Plaintiffs' process for making a wax-alternative recyclable box is a trade secret is a question of fact that should be decided by the jury.

The district court also erred by finding that Plaintiffs "…provided [corrugating] instruction to outsiders, its customers and prospective customers," and "produced neither evidence, nor even a contention, that all of these disclosures were protected by confidentiality agreements." (JA p. 624). Contrary to the district court's assertion, Plaintiffs did provide declarations of the plant manager for Madison Oslin, Inc., and another of its employees. (*See* JA 3720-3721; JA pp. 3723-3724). Both explained that they were specifically instructed by the principals of Madison Oslin that the company's processes were proprietary and confidential, and that reasonable steps were taken by Plaintiffs to protect the secrecy of the information. (*Id.*) Importantly, information about how to corrugate the coated linerboard, was not freely accessible to the employees, and in fact, the entire process was not even made known to the plant manager. (*See* JA 3720-3721; JA pp. 3723-3724; JA pp. 2149-2150; JA pp. 2487-2488; JA p. 4527)(expectation was visitors were routinely asked to sign confidentiality agreements).

Plaintiffs also produced substantial evidence to show that they took reasonable steps to protect their trade secret in their dealings with Defendants. As described above, Plaintiffs were adamant that no information was shared with Defendants until Defendants agreed to form a joint venture with Plaintiffs. And, when Defendants brought an outsider into the process, Plaintiffs required him to sign a non-disclosure agreement. (*Id.; see also*, 2492-2494).

28

Plaintiffs also presented evidence showing that ███████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████ Specific to the district court's concerns regarding corrugating instructions, Plaintiffs also produced an April 17, 2008, email from Major Ogilvie to Jim Krahn and Defendant Morgan, in which Major Ogilvie provided coating information and corrugating instructions and asked that the information be kept confidential. (JA pp. 3822-2826). Therefore, the corrugating instructions given to Defendants are protectable trade secrets by Defendants' own acknowledgement and there is no evidence that the same instructions provided by Plaintiffs to Defendants was provided to anyone else by Plaintiffs.

### 1. A Non-Disclosure Agreement Is Not A Necessary Prerequisite To A Claim For Wrongful Disclosure Of A Trade Secret Under The Alabama Trade Secret Act.

The district court erred by either failing to acknowledge the evidence submitted by Plaintiffs, or by construing the evidence in Defendants' favor to find that the Plaintiffs "produced neither evidence, nor even a contention, that all of these disclosures were protected by confidentiality agreements." The court's determination was also contrary to Alabama law holding that a written non-disclosure agreement is not a necessary prerequisite to a claim for wrongful

disclosure of trade secrets under the Alabama Trade Secret Act. *Molex Co., LLC v. Andress*, 887 F. Supp. 2d 1189 (N.D. Ala. 2012).

    **2.    Absolute Secrecy Is Not Required To Preserve A Trade Secret And Aspects Of The Trade Secret Being Publicly Available Does Not Destroy The Secrecy of the Trade Secret.**

    "The fact that some or all of the components of the trade secret are well-known does not preclude protection for a secret combination, compilation, or integration of the individual elements." *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1291 (11th Cir. 2003)(interpreting Georgia's Trade Secret Act), citing *Essex Group, Inc. v. Southwire Co.*, 269 Ga. 553, 501 S.E.2d 501, 503 (1998) (quoting *Restatement (Third) of Unfair Competition* § 39(f) (1995)). "Hence, even if all of the information is publicly available, a unique combination of that information, which adds value to the information, also may qualify as a trade secret." *Id.*

    Consistent with the Eleventh Circuit, this Court has noted that "[a]bsolute secrecy is not required to preserve a trade secret." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, *supra*, at 418 (4th Cir. 1999). The rationale of *Hoechst* is consistent with Alabama's common law of trade secrets upon which its Trade Secret Act is grounded and the same reasoning should apply. *See Mason v. Jack Daniel Distillery*, 518 So. 2d 130, 133-34 (Ala. Civ. App. 1987)("absolute secrecy is not required for information to constitute a trade secret- a substantial element of

secrecy is all that is necessary to provide trade secret protection."), citing *Drill Parts & Serv. Co., Inc. v. Joy Mfg. Co.*, 439 So. 2d 43, 49-50 (Ala. 1983).

Plaintiffs maintained the secrecy of their process and substantial evidence was presented showing that ███████████████████████████████████ █████████████████ And even if Defendants had been able to do so, the theoretical ability of someone to ascertain by proper means the same unique combination of publicly available elements has been found insufficient to destroy the protectability of the combination from someone who obtained it by misappropriation. *See Essex Group, Inc. v. Southwire Co.*, 269 Ga. 553, 501 S.E.2d 501 (1998)(interpreting a nearly identical trade secret statute). In *Essex*, the Georgia Supreme Court recognized that most, if not all, of the components and equipment used in the system that comprised the trade secret were commercially available. However, the court held that the mere "theoretical possibility" that someone might be able to independently discover the same unique system by proper means was insufficient to destroy the trade secret status of the system, at least until such time as someone other than Plaintiffs did obtain the system by proper means. *Essex*, 269 Ga. at 501. The same reasoning should be applied here.

Likewise, the Tenth Circuit also follows this rationale. In *Hertz v. Luzenac Group*, 576 F.3d 1103, 1109, 91 U.S.P.Q.2d 1801 (10th Cir. 2009), summary judgment for the defendant was reversed when the court found that even if

elements of a process for producing vinyl silane-coated talc are in the public domain, the district court should consider the production process as a whole, not each component separately.

Plaintiffs have demonstrated that adequate evidence exists to enable a reasonable jury to find that Plaintiffs' process for making a wax-alternative recyclable box was not publicly known and was a trade secret. The district court erred in granting summary judgment and its order should be reversed.

**B.     The District Court Erred By Granting Summary Judgment On Plaintiffs' Breach Of Contract Claim Because A Reasonable Jury Could Find That The Parties Formed An Oral Joint Venture Agreement.**

The district court erred by granting Defendants' motion for summary judgment on Plaintiffs' breach of contract claim when numerous factual disputes existed. First, it is a question of fact whether the parties formed an oral joint venture. Second, Alabama law requires that a jury decide any questions regarding whether an oral contract is capable of being performed within one year. Finally, whether Plaintiffs' fully performed their obligations under the terms of the joint venture is also a question of fact reserved for a jury.

The Alabama Supreme Court recognizes that in disputes involving oral contracts and the statute of frauds, "questions concerning the intent of parties to enter a contract are for the factfinder." *Wadsworth House Movers, Inc. v. Salvage One Demolition, Inc.*, 474 So. 2d 686, 688 (Ala. 1985). Applying Alabama law,

any factual disputes regarding the statute of frauds or the intention of the parties to form a joint venture should have been reserved for the jury. Instead, the district court disregarded this in all relevant aspects and ignored the substantial questions of fact presented by Plaintiffs. The district court's ruling constitutes clear error and this Court should reverse it.

### 1.     Whether The Parties Entered Into An Oral Agreement To Form A Joint Venture Is A Question For The Jury.

The district court committed error by ignoring substantial evidence of the existence of an oral joint venture between the parties. Under Alabama law, any dispute between Plaintiffs and Defendants regarding the existence of an oral contract must be decided by a jury. "When the facts material to the question of whether a contract was formed are in dispute, the fact-finder **must** resolve that dispute." *Walker v. Walker*, 2013 WL 5861499, *4 (Ala. Civ. App. November 1, 2014)(emphasis added); *citing Sunnyland Mobile Homes, Inc. v. Thompson*, 384 So. 2d 1111 (Ala. Civ. App. 1980). Additionally, "[t]he terms of an *oral* contract can be established through [parol] evidence, and a determination of those terms is for the trier of fact." *Black Diamond Dev., Inc. v. Thompson*, 979 So. 2d 47, 52 (Ala. 2007). Therefore, when "there [is] conflicting testimony as to the making of a contract, [t]he existence of a contract under such a state of the evidence is a question of fact." *Industrial Maintenance Cleaning Contractors, Inc. v. Sales Consultants of New Orleans, Inc.*, 342 So. 2d 377, 379 (Ala. Civ. App.

33

1977)(holding on appeal that "[i]t is easily seen from the previous statement of the evidence submitted by the parties, that there was conflicting testimony as to the making of a contract. The existence of a contract under such a state of the evidence is a question of fact.").

Here, the parties submitted conflicting evidence as to whether an oral joint venture was formed. Plaintiffs submitted substantial evidence that the parties entered into a joint venture. For example, Plaintiffs and Defendants discussed ███ ███████████████ at their initial meeting in October, 2007. ██████████████ Plaintiffs would supply the knowledge and expertise and be a partner in the parties' joint venture. (JA p. 1992). Interstate ███████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

Moreover, the purpose of the joint venture was accomplished. Supplying Plaintiffs' technology, expertise and equipment to the joint venture led to Defendants' ability to create a wax-alternative, recyclable corrugated box.

In contrast, Defendants deny that the parties entered into a contract to form a joint venture and assert that Defendants did not need or use any information provided to them by Plaintiffs. The district court construed the evidence in favor

of Defendants, and found inconsistent with Alabama law by concluding erroneously that "[s]tatements made by both parties [Plaintiffs & Defendants] unambiguously established that an agreement was never reached and that there was never mutual assent to the essential terms of any agreement."  (JA p. 626). Whether mutual assent existed between the parties is also an issue to be determined by the trier of fact.  *Big Thicket Broadcasting Co. of Alabama, Inc. v. Santos*, 594 So. 2d 1241, 1243 (Ala. Civ. App. 1991); *see also Sunnyland Mobile Homes, Inc. v. Thompson*, 384 So. 2d 1111, 1112 (Ala. Civ. App. 1980)(holding that when there is conflicting evidence regarding an oral contract, it is the duty of the trier of fact to determine if there was a meeting of the minds between the parties.).

Plaintiffs submitted evidence that they assented to the essential terms to form a joint venture.  Plaintiffs testified that ███████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████ During a March, 2008 meeting with Patriot Coatings, Interstate's President, Jim Morgan, said that "wax-alternative

coatings could not be included in the scope of [Patriot Coatings'] project development because Interstate Resources, Inc. ***already had a deal in place to develop and coat containerboard for wax-alternative boxes with Madison Oslin Inc.***" (JA pp. 3428-3420)(emphasis added).[5]  Finally, the parties held themselves out as joint venturers on multiple occasions.  Accordingly, there is ample evidence that mutual assent to the essential terms of the contract exists, and any conflicting evidence should have been resolved by the trier of fact.

### 2.    The District Court Erred As A Matter Of Law Because The Statute Of Frauds Does Not Bar Plaintiffs' Claim For Breach Of Contract.

The district court failed to properly apply Alabama law regarding whether an oral contract that is capable of being performed within one year is subject to the statute of frauds.   Under Alabama law, the statute of frauds bars "[e]very agreement which, by its terms, is not to be performed within one year from the making thereof."  Ala. Code § 8-9-2(1).  The district court erred by deciding that the parties' oral agreement to form a joint venture was incapable of being performed within one (1) year.  Where the agreement expresses no specific time within which the contract is to be completed, it is a jury question as to capability of complete performance within one year. *Cunningham v. Lowery*, 45 Ala. App. 700, 236 So. 2d 709 (Ala. Civ. App. 1970), *cert. denied*, 236 So. 2d 718.  In order to

---

[5] The district court failed to mention this evidence in its Opinion.

bring a contract within the purview of Alabama's Statute of Frauds, the contract **must be incapable** of being performed within one (1) year. *Hornady v. Plaza Realty Co.*, 437 So. 2d 591 (Ala. Civ. App. 1983)(emphasis added); *Hill v. Raney Ins. Agency of Anderson, Inc.*, 474 So. 2d 738 (Ala. Civ. App. 1985).

The district court incorrectly determined that the "purported oral agreement would have *required* performance beyond a one-year period." (JA p. 629)(*emphasis added*). However, nowhere does the parties' joint venture agreement impose such a requirement. In *Quimby v. Memorial Parks, Inc.*, 667 So. 2d 1353, 1356 (Ala. 1995), the Alabama Supreme Court stated the following:

> This Court held [] that a jury question is presented even if it was not likely that the contract would be completed within one year or even if it was not the intention of the parties that it be completed within one year, so long as it was capable of performance within one year. '[T]he statute only means to include an agreement which "by a fair and reasonable interpretation of the terms used by the parties, **and in view of all the circumstances existing at the time**, does not admit of its performance according to its language and intention within a year from the time of its making."' 'A contract is not brought within the statute by the fact that the full performance within a year is highly improbable, nor by the fact that the parties may not have expected that the contract would be performed within the year.' Thus, while it may not have been likely that the contract in this case would have been performed within one year the contract and the circumstances did not preclude its performance within one year; thus a jury question is presented. (Internal citations omitted)(emphasis added).

Here, the terms of the parties' joint venture agreement show that the agreement was fully capable of being performed within one (1) year. The stated purpose of the agreement was to form a joint venture to create a wax-alternative,

recyclable corrugated box. (JA pp. 2463-2464, 2511; JA p. 2757). In fact, the parties anticipated performance of the agreement within one (1) year. ███

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████, the parties' contract was fully capable, and in fact intended to be performed within one (1) year.

Instead of leaving these questions for a jury, as required under Alabama law, the district court concluded that "[c]ertainly, the agreement was 'intended to be a long-term agreement.'" In reaching this improper conclusion, the district court relied solely on *Hornady v. Plaza Realty Co.*, 437 So. 2d 591, 592-93 (Ala. Civ. App. 1983). (JA p. 628-629). The district court held that it all of the contractual obligations over the entire life of the agreement must be considered in order to determine whether performance can be accomplished within one (1) year. (*Id.*). However, unlike the present case, *Hornady* involved a contract for a lease with an

explicit term of 5 years. *Id*. at 592. Additionally, the court in *Hornady* unequivocally stated that "in order to bring a contract within the purview of this section of the Statute of Frauds, the contract <u>must be incapable of being performed within one year</u>." *Id.* at 593, citing *Land v. Cooper*, 250 Ala. 271, 34 So. 2d 313 (1948)(emphasis added). Unlike *Hornady*, Plaintiffs and Defendants did not identify a specific term of years for the joint venture. Moreover, Plaintiffs presented substantial evidence that the contract **was** capable of being performed within one year.

The district court further relied upon one of Plaintiffs' owner's testimony that he considered the joint venture agreement to be a "long term deal." However, the existence of a long-term relationship does not defeat Plaintiffs' claim. *See W.P. Brown & Sons Lumber Co. v. Rattray*, 238 Ala. 406 (Ala. 1939) (Whether contract for cutting, sawing and hauling of timber was capable of complete performance within a year, so as to be within the statue of frauds, was for jury, notwithstanding Plaintiffs' testimony that contract was not likely nor expected to be performed within a year.)

The parties' oral agreement to form a joint venture was capable of being performed within one year – no matter how improbable. The fact that the joint venture could have or might have lasted beyond one year is irrelevant to a statute of frauds analysis. Any questions as to whether the joint venture could have been

completed within one year were questions that should have been given to a jury. Therefore, a jury question was presented and the district courts' grant of summary judgment on the statute of frauds was in error.

> **3.      Whether Plaintiffs' Fully Performed Under The Terms Of The Parties Joint Venture Agreement Is A Question For The Jury.**

Whether Plaintiffs fully performed under the terms of the parties' joint venture agreement is a also a question of fact for a jury.  "Whether a party has substantially performed a promise under a contract is a question of fact to be determined from the circumstances of each case."  *See Dabbs v. Four Tees, Inc.*, 36 So. 3d 542, 557 (Ala. Civ. App. 2008).  Under the terms of the joint venture agreement, Plaintiffs were required to contribute their operational knowledge of the machinery and application of the coating to the joint venture.  (JA pp. 3135-3136).  There is ample evidence demonstrating that Plaintiffs contributed these things to the joint venture.  For example, Defendants' employee, Pete Bugas, testified ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████  Yet, within months of conducting the first trial with Plaintiffs, Interstate's President ████████████████████

███████████



Therefore, contrary to the district court's conclusions, these statements do not reflect a "possible joint venture," but undeniable evidence that Plaintiffs fully performed their obligations under the terms of the agreement. At a minimum, genuine issues of material fact exists which can only be determined by a trier-of-fact.

**C.** **The United States District Court for the Northern District of Alabama incorrectly determined that Plaintiff's claims for Misrepresentation and Suppression are preempted by the Alabama Trade Secrets Act and these claims are now properly appealable.**

On March 15, 2011, the Northern District of Alabama dismissed Plaintiffs' claims for misrepresentation and suppression, finding that Plaintiffs claims were preempted by the Alabama Trade Secrets Act. (*See* JA pp. 337-338). The court determined that the "underlying facts are 'essentially the same' as those pled for relief under the ATSA." (*Id.*)

On March 25, 2015, the United States District Court for the District of Maryland granted summary judgment in favor of Defendants against Plaintiffs dismissing all claims and incorporating any and all prior rulings disposing of any

41

claims against any parties. (JA p. 632). Because the District Court of Maryland granted summary judgment on Plaintiffs' remaining claims, the District Court of Alabama's decision to dismiss Plaintiffs' claims for misrepresentation and suppression is now a final decision and properly appealable. *See* 28 U.S.C. § 1291 (West).

The Northern District of Alabama erred as a matter of law in determining Plaintiffs' claims for misrepresentation and suppression were preempted by the Alabama Trade Secret Act ("ATSA"). Specifically, Plaintiffs pled that "Plaintiffs were told by Morgan and Interstate in October, 2007 and again in 2008 that Interstate desired to be a joint venture partner with Plaintiffs, that Interstate would pay $6 million to Plaintiffs and that Interstate would pay 50% of its profits from the sale of recyclable corrugated boxes to Plaintiffs." (JA p. 49). Plaintiffs also alleged that "Defendants Morgan and Interstate further suppressed the fact that they did not intend to pay $6 million to Plaintiffs or split any profits with Plaintiffs." (JA p. 50). Plaintiffs' claims for misrepresentation and suppression arise from facts underlying Plaintiffs' breach of contract claim and are "essentially the same" as the facts underlying Plaintiffs' trade secret claim. In examining the relevant case law, the Northern District of Alabama found that claims for breach of contract are not preempted by the Alabama Trade Secrets Act. (JA p. 335). Consistent with that rationale and because Plaintiffs' claims for misrepresentation

42

and suppression arise out of the facts surrounding Plaintiffs' breach of contract claim, these claims should not have been dismissed as preempted by the Trade Secrets Act.

Allowing Plaintiffs to pursue claims based on the misrepresentations and suppressions of fact of the Interstate Defendants and Defendant Morgan, in conjunction with their contractual claims is consistent with Alabama law which allows Plaintiffs to plead claims for both fraud and breach of contract arising from the same set of facts or occurrences. "It is well settled under Alabama law that a plaintiff may present alternative, inconsistent, and mutually exclusive claims to the jury." *Beiersdoerfer v. Hilb, Rogal & Hamilton Co.*, 953 So. 2d 1196, 1204 (Ala. 2006). To the point here, in that case the Alabama Supreme Court held that a misrepresentation or suppression claim exists when a plaintiff submits evidence of a parties' lack of intent to be bound by the terms of an oral contract. *See Beiersdoerfer*, 953 So. 2d at 1206-07 (finding that Defendants' acknowledgment that they "agreed" to the terms of the oral contract on behalf of their company constituted substantial evidence indicating they misrepresented the intent to be bound by the putative oral contract). Plaintiffs alleged in their complaint that Defendant Morgan agreed to form a joint venture between the Interstate Defendants and Plaintiffs at the parties' initial dinner meeting and thereafter. (JA pp. 2042, 2063, 2140-2141: JA. p. 2517). However, Defendants now claim that no

43

joint venture existed.  This claim is not preempted by the Alabama Trade Secrets Act, and it should not have been dismissed.

## VI.    CONCLUSION

For the forgoing reasons, the decision of the United States District Court for the District of Maryland granting summary judgment on Plaintiffs' claims for misappropriation of trade secrets and breach of contract should be reversed and the case remanded for a trial on the merits. Likewise, and for the additional reasons stated, the decision of the United States District Court for the Northern District of Alabama dismissing Plaintiffs' claims of misrepresentation and suppression as preempted by the Alabama Trade Secrets Act should be reversed.

/s/ Perry M. Yancey
Rodney E. Miller
James M. Terrell
Perry M. Yancey
MCCALLUM METHVIN & TERRELL, PC
2201 Arlington Avenue South
Birmingham, AL  35205
(205) 939-0199

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains 10,358 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportional spaced typeface using Microsoft Word in 14 point Times New Roman.

Dated:  July 23, 2015                    /s/ Perry M. Yancey
                                         Perry M. Yancey
                                         Rodney E. Miller
                                         James M. Terrell

                                         *Counsel for Appellants*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on July 23, 2015, I electronically filed both the sealed and redacted versions the foregoing Brief of Appellants, with the Clerk of Court using the CM/ECF System, which will send notice of such filings to all counsel of record. I further certify that I served one sealed copy, via UPS Ground transportation upon the following:

Thomas R. Bundy, III
Gail L. Westover
SUTHERLAND ASBILL & BRENNAN, LLP
700 6th Street, NW
Washington, DC  20001
(202) 383-0100

*Counsel for Appellees*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Melissa A. Dockery
Melissa A. Dockery
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219